IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GARRY R. BARNES, an individual, and <br> GLB VENTURE, LLC, an Illinois <br> limited liability company, <br><br> Plaintiffs, <br><br> vs. <br><br> NEUROMARK, INC., a Delaware corporation, <br><br> Defendant. | Case No.: 08C162 <br><br> Judge Ronald A. Guzman <br> Magistrate Judge Morton Denlow |

## ANSWER TO AMENDED COMPLAINT

Defendant, Neuromark, Inc., through its undersigned counsel, responds to the Amended Complaint as follows:

## THE PARTIES

1.      Garry R. Barnes (the "Barnes") is an individual who resides in Lake County, Illinois.

**RESPONSE**:  Admitted.

2.      GLB Ventures, LLC ("GLB" and together with Barnes referred to as "Plaintiffs") is an Illinois limited liability company and is wholly owned by Barnes.

**RESPONSE**:  Defendant lacks sufficient information to admit or deny the allegations in paragraph 2 and therefore denies them.

3.      NeuroMark, Inc. is a Delaware corporation with its principal place of business located in Boulder, Colorado.

**RESPONSE**:  Admitted.

4.    NeuroMark is a neuroscience company engaged in the business of developing and marketing genetic tests and genetically enabled pharmaceuticals.

**RESPONSE**:  Defendant states that it is a neuropsychiactric company engaged in the business of licensing and developing genetic tests relating to neuropsychiactric disorders. Defendant denies the remaining allegations in paragraph 4.

## JURISDICTION

5.    This Court has original jurisdiction of this action pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states and the matter in controversy exceeds $75,000.00, excluding interest and costs.  This Court has supplementary jurisdiction pursuant to 28 U.S.C. § 1367.

**RESPONSE**:  Defendant admits the existence of subject matter jurisdiction.

6.    This Court has personal jurisdiction over Defendant and venue is proper in this District under 28 U.S.C. § 1391 because the parties contractually agreed to litigate this dispute in the District and Defendant has transacted business within this District by, among other things, contracting with and employing Barnes in this District.

**RESPONSE**:  Defendant admits that the subject contract contains a venue provision identifying Illinois as a dispute venue.  Defendant further states, however, that the subject contract contains a provision requiring that the parties arbitrate their disputes in Colorado.  Defendant reserves the right to request that this matter be stayed pending arbitration.  Defendant denies any allegation in paragraph 6 that is contrary to this response.

## BACKGROUND ON ALL COUNTS

7.    On or about March 26, 2007, Barnes and Defendant entered into an Executive Employment Agreement (the "Agreement"), a true and correct copy of which is attached as **Exhibit A**.

**RESPONSE**:  Admitted.

8.　　Barnes' employment under the Agreement was conditioned upon Barnes' investment of $250,000 in Defendant through the purchase of stock in the company. Specifically, the Agreement provides:

> **Investment in NeuroMark**. This employment agreement is conditional upon an investment in NeuroMark, Inc. of $250,000 US in return for which Executive will receive 625,000 common shares (which represents a discount from the current sale price of $.50 per share per agreement with Personal Business Advisors – an Executive Search firm) which will be issued immediately upon receipt of payment. The latest date by which this investment is to be received by NeuroMark is May 11, 2007. The Executive may not transfer any common shares acquired pursuant to this Section 4, except in full compliance with Exhibit A attached hereto.

Agreement at § 4.

**RESPONSE**: Defendant states that the Agreement speaks for itself and denies any allegation in paragraph 8 that is inconsistent with the Agreement's terms.

9.　　Pursuant to the Agreement, on or about April 3, 2007, Barnes delivered $250,000 to Defendant, and Defendant issued 625,000 common shares of the capital stock of NeuroMark to Barnes as evidenced by Stock Certificate No. 238, a true and correct copy of which is attached as **Exhibit B**.

**RESPONSE**: Defendant admits that it received $250,000 from Barnes and that Barnes was issued 625,000 capital shares of Defendant's stock as referenced in Exhibit B to the Complaint. Defendant denies any allegation in paragraph 9 that is inconsistent with this statement.

10.　　In July, 2007, Barnes sought to partially redistribute certain of his NeuroMark shares into GLB.

**RESPONSE**: Defendant lacks sufficient information to admit or deny the allegations in paragraph 10 and therefore denies them.

11.　　Consequently, on or about July 23, 2007, Barnes returned Stock Certificate No. 238 to Defendant, and, in exchange, Defendant issued (i) 250,000 common shares to Barnes,

as evidenced by Stock Certificate No. 245 and (ii) 375,000 common shares to GLB as evidenced by Stock Certificate No. 246. True and correct copies of Stock Certificates 245 and 246 (collectively, the "Certificates") are attached hereto at **Exhibits C and D**, respectively.

**RESPONSE**: Defendant admits that Barnes returned Stock Certificate No. 238 and that it issued to Barnes 250,000 shares of Defendant's capital stock and to GLB Ventures, LLC 375,000 shares of Defendant's capital stock as reflected in Exhibits C and D to the Complaint. Defendant denies any allegation in paragraph 11 that is inconsistent with this statement.

12. Barnes is the beneficial owner of the 375,000 shares issued to GLB.

**RESPONSE**: Defendant lacks sufficient information to admit or deny the allegations in paragraph 12 and therefore denies them.

13. Section 6 of the Agreement governed the termination of Barnes' employment. It stated in pertinent part as follows:

> 6. The Term of this Agreement shall terminate upon the occurrence of any of the following:
>
> \*   \*   \*
>
> b. At the election of the Company, for Cause, upon thirty (30) days written notice by the Company to Executive. For purposes of this Agreement, "Cause" for termination shall be deemed to exist upon a determination by the Board of Directors, after an opportunity for Executive to be heard, that the Executive has committed any of the following conduct:
>
> > i. fraud in connection with his performance of duties hereunder;
> >
> > ii. gross misconduct or unreasonable and continued neglect as an Employee, only after Executive has been given notice and a period of no less than thirty (30) days within which to cure such gross misconduct or reasonable and continued neglect; or

      iii.    conviction of a felony, if such felony detrimentally affects Executive's abilities to conduct his duties hereunder.

*   *   *

    e.    At the election of the Executive, for Good Reason, upon thirty (30) days written notice by the Executive to the Company. For the purposes of this Agreement, "Good Reason" shall be deemed to exist upon a determination by the Executive, if, without the Executive's consent, the Company:

      i.    fails to maintain the Executive in his position;

      ii.    fails to pay the Base Salary or provide the benefits stated in section 5 of this Agreement as and when required to be paid hereunder; or

      iii.    fails to have any successor in interest to the Company or any acquirer or any portion of the assets of the Company greater than 50%, assume all obligations under this Agreement.

**RESPONSE**:  Defendant states that the Agreement speaks for itself and denies any allegation in paragraph 13 that is inconsistent with the Agreement's terms.

14.    During Barnes's employment, Defendant failed to maintain Barnes in his position as Chief Commercial Officer by denying him the "duties, power and responsibilities" of the position as set forth in Section 2 of the Agreement

**RESPONSE**:  Denied.

15.    During Barnes's employment, despite demand, Defendant repeatedly failed to pay Barnes his salary on a timely basis.

**RESPONSE**:  Denied.

16.    Barnes complained to Defendant about its failure to maintain him in his position and to pay him on a timely basis.

**RESPONSE**: Defendant admits that Barnes complained about the timing of payments but denies that he had any basis for such complaint and Defendant denies the remaining allegations in paragraph 16.

17. On October 15, 2007, Barnes gave Defendant 30-days notice of his resignation.

**RESPONSE**: Admitted.

18. Because of Defendant's conduct as alleged in the immediately preceding paragraphs, Barnes had Good Reason (as defined in Section 6 of the Agreement) to resign his employment.

**RESPONSE**: Denied.

19. On October 31, 2007, Defendant responded to Barnes's notice of resignation by stating that it had "cause" to terminate his employment.

**RESPONSE**: Admitted.

20. On November 7, 2007, Defendant terminated Barnes' employment.

**RESPONSE**: Admitted.

21. No Cause (as defined in Section 6 of the Agreement) existed to terminate Barnes's employment.

**RESPONSE**: Denied.

22. Prior to terminating Barnes's employment, Barnes was not given 30-days notice of the termination, nor was he provided an opportunity to be heard by Defendant's Board of Directors.

**RESPONSE**: Denied.

23. On information and belief, there was no determination by the NeuroMark Board of Directors that Barnes had engaged in any act or acts constituting Cause to terminate his employment.

**RESPONSE**: Denied.

24. Section 7 of the Agreement states that if NeuroMark terminates Barnes' employment without Cause or if he resigns with Good Reason, among other things, NeuroMark is obligated to continue to pay him his base salary for a period of six months.

**RESPONSE**: Defendant states that the Agreement speaks for itself and denies any allegation in paragraph 24 that is inconsistent with the Agreement's terms.

25. Despite demand, Defendant has failed to continue to pay Barnes his base salary in accordance with Section 7 of the Agreement.

**RESPONSE**: Defendant admits that it has not continued to pay to Barnes his base salary and denies that such is required by the Agreement, and denies the remaining allegations in paragraph 25.

26. Following his wrongful termination, by letter dated November 16, 2007, Barnes made a written demand under oath to inspect certain corporate books and records of Defendant pursuant to 8 Del. C §220 (the "Inspection Demand"). A true and correct copy of the Inspection Demand is attached hereto as **Exhibit E**.

**RESPONSE**: Defendants admit that Barnes made a written demand, dated November 16, 2007, to inspect corporate books and records and denies the remaining allegations in paragraph 26. Defendants state that such demand was for an improper purpose.

27. In response to the Inspection Demand, by letter dated December 7, 2007, Kim Bechtold, Chief Executive Officer and Chairman of NeuroMark, among other things, repudiated the stock purchase under the Agreement (the "Stock Purchase"), asserting that Barnes was not a "bona fide Shareholder of NeuroMark," and denying Barnes his rights as a shareholder. A true and correct copy of Ms. Bechtold's letter is attached as **Exhibit F**.

**RESPONSE**: Defendant denies that it repudiated the Stock Purchase and denies Plaintiffs' characterization of the December 7, 2007 letter.

## COUNT I

### (Rescission brought by Plaintiffs)

28.　　Plaintiffs repeat the allegations set forth in paragraphs 1 through 27 and incorporate them herein as if set forth at length.

**RESPONSE**: Defendant incorporates the above responses herein by reference.

29.　　In connection with the rejection of Barnes's Inspection Demand, Ms. Bechtold, acting on behalf of Defendant, renounced the Stock Purchase.

**RESPONSE**: Denied.

30.　　Defendant has repudiated the Stock Purchase and refuses to be bound by the Stock Purchase and Certificates.

**RESPONSE**: Denied.

31.　　Upon notice of Defendant's repudiation, Plaintiffs, through counsel, sent Defendant a certified letter offering to tender the Certificates to Defendant in exchange for return of his $250,000 investment.

**RESPONSE**: Defendant lacks sufficient information to admit or deny the allegations in paragraph 31.

32.　　Defendant refused to respond to Plaintiff's certified tender, and has refused to return the $250,000 to Plaintiffs.

**RESPONSE**: Defendant admits that it has not exchanged Plaintiffs' stock for $250,000 and denies that it is obligated to do so.

33.　　As a result of Defendant's repudiation of the Stock Purchase, Plaintiffs are entitled to rescission of the Stock Purchase and return of the $250,000 investment.

**RESPONSE**: Denied.

## COUNT II

**(Breach of Contract – Denial of Shareholder Rights brought by Plaintiffs)**

34.　Count II is brought in the alternative to Count I.

**RESPONSE**:  These allegations require no response.

35.　Plaintiffs repeat the allegations set forth in paragraphs 1 through 33 and incorporate them herein as if set forth at length.

**RESPONSE**:  Defendant incorporates the above responses herein by reference.

36.　Defendant has breached and/or anticipatorily breached the Agreement by rejecting the Inspection Demand and denying that Plaintiffs are bona fide shareholders of the Defendant.

**RESPONSE**:  Denied.

37.　Barnes has performed everything required of him under the Agreement and GLB has performed any obligations it has to Defendant.

**RESPONSE**:  Denied.

38.　Plaintiffs have suffered and will suffer harm as a result of Defendant's breach and/or anticipatory breach of the Agreement.

**RESPONSE**:  Denied.

## COUNT III

**(Breach of Contract – Sections 6 and 7 of the Agreement brought by Barnes)**

39.　Count III is independent of Counts I, II and IV.

**RESPONSE**:  These allegations require no response.

40.　Barnes repeats the allegations set forth in paragraphs 1 through 38 and incorporates them herein as if set forth at length.

**RESPONSE**:  Defendant incorporates the above responses herein by reference.

41.　On October 15, 2007, Barnes gave Defendant 30-days notice of his decision to resign his employment with Defendant.

**RESPONSE**:  Admitted.

42. Barnes had Good Reason to resign his employment pursuant to Section 6(e) of the Agreement.

**RESPONSE**:  Denied.

43. On November 7, 2007, Defendant terminated Barnes's employment with Defendant without Cause.

**RESPONSE**:  Denied.

44. Pursuant to Section 7(c) of the Agreement, upon a resignation for Good Reason or termination without Cause, Defendant is obligated to continue to pay Barnes his base salary for a period of six months ("Severance Payments").

**RESPONSE**:  Defendant states that the Agreement speaks for itself and denies any allegation in paragraph 44 that is inconsistent with the Agreement's terms.

45. Despite written demand, Defendant has failed to pay Barnes the Severance Payments.

**RESPONSE**:  Defendant admits that it has not made a severance payment and denies that Barnes is entitled to any such payment.

46. Further, Barnes incurred various reasonable business expenses in performing his duties as Defendant's employee, for which Barnes has not been reimbursed by Defendant.

**RESPONSE**:  Denied.

## COUNT IV

### (Inspection of Books and Records brought by Plaintiff)

47. Count IV is brought in the alternative to Count I.

**RESPONSE**:  These allegations require no response.

48. Plaintiffs repeat the allegations set forth in paragraphs 1 through 46 and incorporates them herein as if set forth at length.

11218\1\1183156.1                                            10

**RESPONSE**:  Defendant incorporates the above responses herein by reference.

49.     On November 16, 2007, Plaintiffs made the Inspection Demand.

**RESPONSE**:  Admitted.

50.     The Inspection Demand was based upon Plaintiffs' ownership of 625,000 shares of common stock of Defendant, and the specified purpose for the demand was to:  (a) use in ascertaining the value of Plaintiffs' shares; (b) communicate with other stockholders regarding Defendant's affairs and management policies; (c) determine whether general corporate mismanagement has occurred; (d) determine the terms of the investment made in Defendant; and (e) analyzes whether Defendant is able to deliver any return on Barnes's investment.

**RESPONSE**:  Denied.

51.     The aforesaid purposes asserted by Barnes are related to Plaintiffs' interests as stockholders in Defendant and were reasonable and proper in light of Barnes' wrongful termination and Ms. Bechtold's apparent attempt to freeze-out Plaintiffs' minority interest in Defendant.

**RESPONSE**:  Denied.

52.     Defendant rejected the Inspection Demand in its entirety, which rejection was unlawful and improper.

**RESPONSE**:  Denied.

WHEREFORE, Defendant requests that the Court find in favor of Defendant on all of Plaintiffs' claims, that the Court dismiss all of Plaintiffs' claims, with prejudice, and that the Court grant to Defendant an award of its costs and expenses, including without limitation, attorneys' fees, and any further relief the Court deems proper.

## AFFIRMATIVE DEFENSES

1.      Plaintiffs' claims, in whole or in part, fail to state a claim upon which relief can be granted.  Plaintiffs cannot state a claim for relief for rescission because the Stock Purchase has not been repudiated.  Plaintiffs cannot state a claim for breach of contract relating to the Executive Employment Agreement because Barnes is not entitled to Severance Payments under

Sections 6 and 7 of that Agreement. Plaintiffs cannot state a claim relating to their shareholder rights because Defendant has provided to Plaintiffs all documents required by law.

2.　　Plaintiffs' claim for breach of contract relating to the Executive Employment Agreement fails, in whole or in part, because of fraud in the inducement relating to Barnes' misrepresentation to Defendant of his abilities to fulfill the requirements of his position and his actual failure to fulfill the requirements of his position.

3.　　Plaintiffs' claim for breach of contract relating to the Executive Employment Agreement fails, in whole or in part, because of Plaintiffs' own misrepresentation and unclean hands relating to Barnes' misrepresentation to Defendant of his abilities to fulfill the requirements of his position and his actual failure to fulfill the requirements of his position.

4.　　Plaintiffs' claim for breach of contract relating to the Executive Employment Agreement fails, in whole or in part, because of Plaintiffs' own breach of contract based on Barnes' misrepresentations to Defendant of his abilities to fulfill the requirements of his position and his actual failure to fulfill the requirements of his position.

5.　　Plaintiffs' claims relating to their shareholder rights fail, in whole or in part, because Defendant has provided to Plaintiffs all documents required by law.

6.　　Plaintiffs' claim for breach of contract relating to the Executive Employment Agreement fails, in whole or in part, because Barnes' resignation was without Good Reason as defined in Section 6(e) of the Agreement.

Respectfully submitted this 8th day of September, 2008.

                                    SPERLING & SLATER, P.C.

                                    By: /s/ Adam P. Merrill
                                    One of Their Attorneys

Adam P. Merrill
Dina G. Rollman
Sperling and Slater, P.C.
55 West Monroe, Suite 3200
Chicago, Illinois 60603
Tel. 312.641.3200
amerrill@sperling-law.com
drollman@sperling-law.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 8th day of September 2008, a true and correct copy of the foregoing **ANSWER TO AMENDED COMPLAINT** was served upon all counsel of record via the Court's CM/ECF system.

By:     */s/* Adam P. Merrill
            Adam P. Merrill